UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

March 18, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **CM** _____

DEPUTY

| | | |
|---|---|---|
| Yojancy Gonzalez Prieto, | § | |
| | § | |
| Petitioner-Plaintiff, | § | |
| v. | § | 5:26-CV-01396-MA |
| | § | |
| Warden South Texas Detention Facility, et al., | § | |
| | § | |
| | § | |
| Respondents-Defendants. | § | |

**OPINION AND ORDER**

The Court now considers Petitioner Yojancy Gonzalez Prieto's "Petition for Writ of Habeas Corpus."[1] Petitioner, who is currently in immigration detention, alleges that Respondents are holding him in unlawful custody cognizable in habeas corpus under 28 U.S.C. § 2241 and seeks immediate release "under reasonable conditions of supervision."[2] Upon reviewing the petition, response, and applicable law, the Court **GRANTS** Petitioner's writ.

## I.   Factual Background

Petitioner is a citizen and national of Cuba who entered the United States through Hildalgo, Texas on April 22, 2018.[3] He was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5) on April 25, 2018.[4] Petitioner subsequently filed an I-485 application for adjustment of status under the Cuban Adjustment Act,[5] and obtained a Form I-765 employment authorization document authorizing him to work in the United States from December 6, 2023 until December 5, 2028.[6]

On December 10, 2025, Petitioner was detained during a routine traffic stop while engaged in lawful employment as a licensed truck driver.[7] Petitioner has since remained in detention without a bond hearing or opportunity for release.[8]

---

[1] Dkt. No. 1.
[2] Dkt. No. 1, at 23.
[3] Dkt. No. 1, at 1.
[4] Dkt. No. 1-2, at 8.
[5] Dkt. No. 1-3, at 2–3.
[6] Dkt. No. 1-4, at 2.
[7] Dkt. No. 1, at 1.
[8] Dkt. No. 1, at 1–2.

Petitioner asserts that he is being detained unlawfully under *Yajure-Hurtado*, which reinterprets § 1225(b)(2)(A) to apply to virtually all inadmissible noncitizens who entered the country without inspection.[9] Additionally, Petitioner asserts that his arrest and re-detention were unlawful because it occurred "without prior written notice required by regulation and without providing any explanation or reasoning for revoking parole."[10] In light of this, Petitioner argues that his re-detention: (1) violates his Fourth and Fifth Amendment rights; (2) violates the terms of the Immigration and Nationality Act (8 U.S.C. § 1225–26); and (3) violates the Administrative Procedure Act.[11] Accordingly, he requests that the Court order his release.[12]

Respondents argue that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2), which they argue requires them to detain Petitioner without opportunity for release on bond until his removal proceedings are concluded.[13]

Respondents additionally argue that any procedural due process claim that Petitioner could raise fails on the merits because, under Supreme Court precedent, only lawfully admitted noncitizens—not those merely paroled or physically present—acquire due process interests that could require procedures beyond what Congress has provided.[14]

## II.    Jurisdiction

A writ of habeas corpus is used to challenge an arrest, commitment, detention, extradition, bail, or the jurisdiction of a criminal sentence.[15] Under 28 U.S.C. § 2241, district courts may hear habeas corpus challenges to the legality of the detention of aliens.[16] Petitioner is detained in the South Texas Detention Facility in Pearsall, Texas, within the Western District of Texas.[17] Jurisdiction is properly laid within this Court.

---

[9] Dkt. No. 1, at 5–9; *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025); 8 U.S.C. § 1225(b)(2)(A).
[10] Dkt. No. 1, at 8–11.
[11] Dkt. No. 1, at 3–23.
[12] Dkt. No. 1, at 23.
[13] Dkt. No. 7, at 3–4.
[14] Dkt. No. 7, at 8.
[15] *See Habeas Corpus*, BLACK'S LAW DICTIONARY (11th ed. 2019); 28 U.S.C. § 2241.
[16] *Rasul v. Bush*, 542 U.S. 466, 473 (2004); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) ("The writ . . . provide[s] a means of contesting the lawfulness of restraint and securing release.");
[17] Dkt. No. 1, at 2.

### III.    Analysis

The parties dispute whether Respondents have statutory authority to detain Petitioner and whether his detention violates the Due Process Clause of the Fifth Amendment. The Court considers each of these in turn.

#### a.  Statutory Authority to Detain Petitioner

As Respondents correctly note, the Fifth Circuit has interpreted 8 U.S.C. § 1225(b)(2) as mandating detention for all noncitizens in removal proceedings who are present in the United States but not "clearly and beyond a doubt entitled to be admitted."[18] However, Respondents fail to acknowledge that Petitioner was released on humanitarian parole at the time of his arrest and re-detention. Although individuals detained under section 1225 are ineligible for bond, "any alien applying for admission" may be "paroled into the United States . . . for urgent humanitarian reasons or significant public benefit."[19] Humanitarian parole is granted at DHS's discretion and expires "when the purposes of such parole . . . have been served," at which point the alien must "return or be returned to . . . custody."[20] Apart from automatic termination upon departure from the United States, parole may be ended only by written notice after an authorized DHS official determines that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States."[21]

Petitioner argues that because DHS re-detained him without notice or an individualized determination in violation of its own regulations, his detention is unlawful.[22] Although DHS has broad discretion to revoke humanitarian parole, that discretion is not unlimited, and many district courts to recently consider the issue have found that the statute implicitly requires at least some degree of an individualized, pre-arrest assessment.[23]

The current record does not indicate that the objective of Petitioner's parole has been satisfied or that his parole was terminated before his arrest. Respondents have not even attempted to argue that they satisfied the requirements for revoking parole under § 1182(d)(5)(A), and

---

[18] Dkt. No. 8, at 1 (citing *Buenrostro v. Bondi*, No. 25-20496, ---- F.4th ---- 2026, WL 323330, at *1 (5th Cir. Feb. 6, 2026).

[19] *Matter of M-S-*, 27 I&N Dec. 509, 516–17 (2019),

[20] 8 U.S.C. § 1182(d)(5)(A).

[21] 8 C.F.R. § 212.5(e)(1)–(2).

[22] Dkt. No. 1, at 8–11.

[23] *See, e.g., Padilla Hernandez v. Raycraft et al.*, No. 1:25-CV-1719, 2025 WL 3730936, at *5 (W.D. Mich. Dec. 26, 2025) (collecting cases).

nothing before the Court suggests that the humanitarian or public-interest grounds underlying Petitioner's grant of parole ceased to exist. Accordingly, the Court considers whether Respondents have detained Petitioner unlawfully in violation of 8 C.F.R. § 212.5(e).

### b. Due Process

Petitioner's primary argument focuses on his detention despite the fact that he was paroled into the United States and that his parole was never revoked. Although Respondents hint that his parole may be revoked, the record supports Petitioner's claim that his parole status remains active. Thus, the Court considers Petitioner's due process arguments. Respondents do not state any individualized justification for revoking Petitioner's humanitarian parole. Respondents cite numerous Supreme Court cases which they allege support the arguments that: (1) a noncitizen has no due process interest in their humanitarian parole status;[24] and (2) that, even if Petitioner was unlawfully arrested and re-detained, this defect would be irrelevant to the legality of his detention.[25]

As a preliminary matter, the Court notes that the Supreme Court cases upon which Respondents rely do not support the propositions for which they are cited.

The Court is unpersuaded by Respondents' reliance on *Walker v. Wainwright*, *Lane v. Williams*, *Preiser v. Rodriguez*, and *Lindh v. Murphy.* Those cases do not stand for the proposition that Respondents may arbitrarily detain Petitioner while he is on parole without any notice or an opportunity to be heard.

The Court is similarly unpersuaded by Respondents argument that Supreme Court precedent "make clear that lawful admission—not physical entry (or even parole)—is the touchstone" for any due process interest.[26] *Kaplan v. Tod*, decided under a long-superseded statute, concerned a child who had been formally excluded and treated by legal fiction as never having entered the country.[27] Whatever force it may have had in its historical context or might still possess in modern analogues, such as withholding of removal, it did not involve "parole" in any sense analogous to humanitarian parole under INA § 212(d)(5).[28] *Landon v. Plascencia*, meanwhile,

---

[24] Dkt. No. 7, at 8 (citing *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925); *Landon v. Plasencia*, 459 U.S. 21, 32-33, 36–37 (1982); *Nishimura Ekiu v. United States*, 142 U.S. 651, 663–64 (1892)).
[25] Dkt. No. 7, at 12–13 (citing *Walker v. Wainwright*, 390 U.S. 335, 336 (1968); *Lane v. Williams*, 455 U.S. 624, 631 (1982); *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *Lindh v. Murphy*, 521 U.S. 320, 342 (1997)).
[26] Dkt. No. 7, at 8.
[27] *Kaplan*, 267 U.S. at 229–31.
[28] 8 U.S.C. § 1182(d)(5).

expressly recognized that immigration proceedings can trigger the Due Process Clause and remanded for the lower court to conduct a balancing analysis, [29] while *Nishimura Ekiu v. United States* discussed only limits to judicial review of initial border-exclusion decisions under a now-superseded statute.[30] None of the cases Respondents cite dictate that, as a parolee, Petitioner has no due-process-protected liberty interests, or speak to the constitutional rights implicated in the revocation of a status that has already been conferred.

The Court finds the Supreme Court's holding in *Accardi* that an agency's failure to follow its own regulations can itself constitute a due process violation[31] to be far more relevant in the instant case. On this understanding, and in light of the Court's instructions in *Landon*, the Court proceeds with analysis under *Mathews v. Eldridge.*

Under *Mathews v. Eldridge*,[32] a court must determine whether a civil detention violates a detainee's due process rights by considering: (1) the private interests affected by the government action; (2) the risk of erroneous deprivation of those interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[33] "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time."[34]

### i.  Private Interest

"The interest in being free from physical detention' is 'the most elemental of liberty interests.'"[35] This Court has found criminal parolees' entitlement to a pre-deprivation hearing based on their reasonable expectation of continued liberty to be "informative" in the civil immigration context.[36] As civil immigration detention is nonpunitive in nature,[37] the Court sees no justification for concluding that a humanitarian parolee has less of a liberty interest than any other parolee. Because he has spent six years at liberty in the United States on humanitarian parole,

---

[29] *Landon*, 459 U.S. at 32–33, 36–37.
[30] *Nishimura*, 142 U.S. at 663–64.
[31] *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).
[32] *Mathews v. Eldridge*, 424 U.S. 319 (1976).
[33] *Mathews*, 424 U.S. at 335.
[34] *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 685 (W.D. Tex. 2025) (internal citations omitted).
[35] *Martinez v. Noem*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).
[36] *Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *11 (internal citations omitted).
[37] *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

the Court concludes that Petitioner has a cognizable interest in his freedom from arbitrary re-detention.

### ii. Risk of Erroneous Deprivation

When assessing the risk that an individual's liberty interests may be erroneously deprived, courts consider the sufficiency of the challenged procedures and "the degree to which alternative procedures could ameliorate those risks."[38] The Supreme Court has found that civil immigration detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint."[39] Respondents provide nothing to suggest that the motivation underlying Petitioner's original release no longer exists, or that an authorized official considered this question before Petitioner's arrest. Respondents fail to indicate that even single procedural safeguard existed to ensure that Petitioner's detention was justified in light of his humanitarian parole, and, in fact, appear to suggest that such safeguards are irrelevant to the point of disregard.[40] Considering this, the Court concludes that the risk of erroneous deprivation under Respondents' current procedural processes appears high. Thus, the second factor weighs in Petitioner's favor.

### iii. Government Interest

Respondents do not identify an interest in Petitioner's detention beyond claiming that it is mandatory. The Court acknowledges that the government has generalized interests in enforcing immigration law, ensuring that individuals appear at their immigration proceedings, and avoiding unnecessary incremental costs.[41] However, the Court finds that the burden of providing notice upon an individualized assessment in accordance with agency regulations cannot be so great as to warrant the eschewing of such regulations altogether. Therefore, this factor also supports a finding that Petitioner has been denied procedural due process.

Finding that all three *Mathews* factors weigh in Petitioner's favor, the Court finds that Petitioner's detention without any notice or an individualized assessment deprives him of the constitutional right to procedural due process under the Fifth Amendment of the United States Constitution.

---

[38] *Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *11 (quoting *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025)).
[39] *Zadvydas*, 533 U.S. at 690.
[40] Dkt. No. 7, at 12–13.
[41] *Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *686–87.

## CONCLUSION

Accordingly, the Petition for Habeas Corpus is **GRANTED**. It is **ORDERED** that:

1. Respondents **RELEASE** Petitioner from custody, under appropriate conditions of release, to a public place by **no later than March 20, 2026, at 2 p.m.;**

2. Respondents **NOTIFY** Petitioner's counsel of the exact location and exact time of Petitioner's release as soon as practicable and no less than two hours before his release;

3. The parties shall **FILE** a Joint Status Report **no later than 4:00 p.m. on March 22, 2026**, confirming that Petitioner has been released.

A final judgment will issue separately.

IT IS SO ORDERED.

DONE this 18th day of March, 2026, in San Antonio, Texas.

_____

MICAELA ALVAREZ
SENIOR UNITED STATES DISTRICT JUDGE